**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

K.H. on behalf of D.B.,

                            Plaintiffs,                         **COMPLAINT**

           -against-

                                                  **08 CV 0025**

New York City Department of Education,

                            Defendant.

-----------------------------------------------------------------

      Plaintiff K.H., on behalf of D.B., by their attorneys, Mayerson & Associates, as and for their Complaint against defendant, the New York City Department of Education ("NYCDOE"), allege the following:

    1.  This action seeks to assess, adjudicate, and fix the amount of plaintiffs' entitlement to statutorily recoverable attorneys' fees and the related costs and disbursements associated with having achieved "substantially prevailing party status" at successive administrative due process proceedings involving the provision of a free and appropriate public education ("FAPE") to plaintiff D.B., for purposes of the 2004-2005 school year.  This action is being brought pursuant to the provisions of 20 U.S.C. § 1400 *et. seq.*, more commonly known as the Individuals with Disabilities Education Improvement Act ("IDEIA"), and in particular, 20 U.S.C. §§ 1415(i)(3)(A)-(G).

    2.  Pursuant to 20 U.S.C. §§ 1415(i)(3)(A)-(G), D.B. should be awarded attorneys' fees and costs as the substantially prevailing party in Case No. 56004 (2004-2005) conducted through defendant's Impartial Hearing Office.

3.  This Court has jurisdiction pursuant to 20 U.S.C. §§ 1415(i)(3)(A)-(G) and <u>A.R. v. N.Y. City Dept. of Educ.</u>, 407 F.3d 65 (2d Cir. 2005), without regard to the amount in controversy.

4.  Venue properly lies in this district as plaintiffs reside and defendant has offices located in this district.

5.  D.B., the son of plaintiff K.H., is a minor child who has been diagnosed with an autism spectrum disorder.  D.B. is, and at all relevant times has been, a student within the NYCDOE entitled to all the rights and procedural safeguards mandated by applicable law and statutes, including but not limited to the IDEIA and the New York State Education Law.

6.  Plaintiff K.H., the mother of D.B., at all relevant times has resided within this district and currently resides at 52 West 70th Street, Apt. G., New York, New York 10023.

7.  Plaintiff K.H., and her son D.B., are not expressly named within this Complaint because of the privacy guarantees contained in the IDEIA and 20 U.S.C. § 1232(g), more commonly referred to as the Family Educational Rights and Privacy Act.

8.  Defendant is a local educational agency that continues to have the responsibility to provide a free and appropriate public education (hereinafter "FAPE") to D.B. in his least restrictive environment pursuant to D.B.'s statutory rights as a student with a disability.

9.  On or about September 8, 2004, plaintiff initiated an administrative, due process proceeding (Case No. 56004) against the defendant, in order to secure reimbursement and other relief based upon the NYCDOE's failure to provide D.B. with a FAPE for purposes of the 2004-2005 school year.

10. Following a period of preparation and evidentiary disclosures, an evidentiary hearing followed.  Attorney Gary S. Mayerson and other Mayerson & Associates functionaries represented plaintiffs throughout this proceeding (Case No. 56004).

11. By "Findings of Fact and Decision" dated January 4, 2005, Impartial Hearing Officer Judith Pierce rendered an award in favor of D.B., in Case No. 56004, establishing plaintiff as substantially prevailing parties in that latest administrative due process proceeding.[1]  Defendant never appealed from the underlying administrative decision, which became final and non-appealable.

12. Due to plaintiffs' status as the substantially prevailing party, they are entitled to attorneys' fees and costs in the administrative proceedings at the IHO level, at the currently "prevailing" rates.

13. The fees and costs that were recorded by plaintiffs' counsel are reasonable and appropriate and plaintiffs' counsel has recognized special expertise in special education matters in general, and autism spectrum matters in particular. The Second Circuit and other courts have previously recognized plaintiffs' counsel's special expertise and have held that IDEA-based fees at the administrative level are to be treated no differently than attorneys' fees at the federal level.

14. Necessary duties involved with preparing D.B.'s case for the multiple administrative hearings at the IHO level included, but were not limited to: (a) significant file review and analysis of IEP's assessments, evaluations and progress reports; (b) communications with plaintiffs and other potential witnesses; (c) drafting, writing and filing detailed impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to D.B.'s claims; (e) scheduling and preparing witnesses to testify at the hearing; (f) developing and readying an effective case presentation; and (g) commencing and prosecuting this action, including litigating any fee application that may be made, as well as any appeals that might be taken.

---

[1] A copy of the decision is annexed hereto as Exhibit A.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should: (a) fix and award plaintiffs attorneys' fees and related costs and disbursements from the IDEIA administrative due process matter, in an amount to be set by this Court, but not less than the attached hourly detail,[2] recalculated at *currently* prevailing rates; (b) award plaintiffs their attorneys' fees and related costs and disbursements of this action, including the anticipated fee application, in an amount to be set by this Court; and (c) award plaintiffs such other, further and different relief as the Court deems appropriate under the circumstances.

Dated: January 3, 2008
      New York, New York

          *s/* Gary S. Mayerson
          Gary S. Mayerson (GSM8413)
          Mayerson & Associates
          Attorneys for Plaintiff
          330 West 38th Street, Suite 600
          New York, New York 10018
          (212) 265-7200
          (212) 265-1735 (fax)

---

[2] The hourly detail is annexed hereto as Exhibit B.

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 56004 |
| NYS Case Identifier Number: | 11751 |
| Student's Name: | David Brault |
| Date of Birth: | March 26, 2001 |
| District: | 3 |
| Hearing Requested By: | Parent |
| Date of Hearing: | November 2, 2004 |
| Hearing Officer: | Judith T. Pierce, Esq. |

Hearing Officer's Findings of Fact and Decision

Case No. 56004

## NAMES AND TITLES OF PERSONS WHO APPEARED

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| Kim Hodges | Parent | |
| Monique Vallario (Via Telephone) | Witness | Parent |
| Deidre King (Via Telephone) | Witness | Parent |

Case No.  56004

## INTRODUCTION

On September 8, 2004, the parents, by their attorney Gary Mayerson & Associates, requested an impartial hearing, for tuition reimbursement for David B.'s current preschool placement and increased hours for Applied Behavioral Analysis (ABA) therapy services/special education itinerant teacher (SEIT) and related services.  The hearing took place before me on November 2, 2004 and concluded on the same day.  The parents stated that the Department of Education (DOE) procedurally violated both State and Federal Education law since they failed to give the parents a copy of the Individual Education Program (IEP) until after the beginning of the school year.  In addition, the parents also assert that the Committee on Preschool Special Education (CPSE) had not provided an appropriate level of ABA/SEIT services consistent with the recommendations made by the team of professionals who evaluated David and which would allow him to receive a free appropriate public education (FAPE) in a least restrictive environment.   No district representative appeared at the hearing.[1]

## BACKGROUND

David is a three-year-old boy diagnosed with Pervasive Development Disorder (PDD) on the autism spectrum.  As of September, 2004, David currently attends a preschool program at the Westside YMCA for three (3) hours a day, five (5) days a week.  An ABA aide accompanies him. (T. 7, 35)  At the beginning of 2004, David was in the process of transitioning from home-based early intervention services.  David was receiving special instruction (ABA) as well as speech/language and occupational therapies in his home.  At the request of the Committee on Preschool Special Education (CPSE), District 3, David was evaluated by a number of professionals[2] under the auspices of the Association for the Health of Retarded Children (AHRC) agency in February and March 2004 to assist in the development of educational plans for the next year.  James Mara, MS, PhD conducted the educational evaluation. (Exhibit 1)  He found that David exhibited significant delays in

---

[1] This hearing officer was advised that no one from the district would be attending.
[2] As set forth in the Preschool student evaluation summary report, the evaluators could not recommend the general type, frequency and duration of the special services  and programs needed nor address the manner in which the special services and programs can be provided in the least restrictive environment.

communication, socialization, attention to task and sensory integration.   (Exhibit 1)
Dr. Mara recommended that David continue with his ABA home based training. Ms. Mari, a
speech-language pathologist also found that David had significant speech and language
deficits. (Exhibit 2)   Ms. Mari pointed out that David's auditory comprehension skills were
at the 1.3-year level and expressive language skills at the 1.10-year level.  Ms. Mari noted
that David presented with a marked deficit with the auditory processing and verbal
formulation of simple syntactic form.   She recommended continued speech and language
intervention to meet David's developmental and educational needs.

Graciela Cassel, a licensed Psychologist for AHRC, evaluated David on February 24,
2004.  Dr. Cassel noted that David's skills are within the significantly delayed performance
range and that he performed as a 20-month-old child would in verbal, visual perceptual and
motors skills.   His daily living skills and social skills are also delayed.  (Exhibit 3)

Finally, Steven Blaustein, a speech-language pathologist retained by the parents examined
David on March 29, 2004. (Exhibit 6)  He found that David presented with a severe receptive
and expressive language disorder, characterized by markedly restricted form, content and use
of language, auditory processing deficit, with echolalic and reauditorized utterance and
difficulties in pragmatic skills.  Noting the positive impact of the ABA therapeutic work that
David had received, Dr. Blaustein recommended that David continue with the
speech/language therapy he was receiving and suggested intensive ABA services of at least
35 hours per week.  The ABA services would include therapy, appropriate supervision and
team meetings with the educational professionals servicing this child and his parents.
(Exhibit 6)  Moreover, Dr. Blaustein suggested that David enroll in small group activities to
allow for the opportunity for peer modeling and social intervention with children of similar
age who use appropriate social behaviors and that he has an ABA therapist accompany him to
the program.  (Exhibit 6)

The CPSE met on May 6, 2004 with David's mother present.  (Exhibit 7)  Although the IEP
is dated May 6, 2004, the parent stated that she did not receive a copy of the IEP until after
the school year began. (T. 6 )  There is a faxed date stamp of 10/26/2004 on the fax but no
indication from where it was sent.  Since no representative from the District was present, no

Hearing Officer's Findings of Fact and Decision                                    4

Case No.  56004

---

information was available to ascertain whether the document was sent from the District. Following the CPSE meeting, the committee sent the mother a letter, dated May 6, 2004, advising her that the Committee was recommending a 20 hour home based program providing a special education itinerant (SEIT) plus related services, including occupational and speech/language therapy three times a week.  On May 18, 2004, the mother signed the letter indicating that she was "accepting services on a without prejudice basis".  (Exhibit 8) Thereafter, on July 14, 2004, the DOE notified the parent by letter that SEIT services would be provided by CARD and would begin on September 7, 2004. (T. 10, Exhibit 9)  By letter dated August 18, 2004, the parents notified the CPSE for Region 10, District 3 that they believed that the services offered for David were insufficient to provide David with an appropriate education. (Exhibit 11) They advised that they would be securing additional services of 15 hours of ABA services, supervisory services and team meetings and two hours of additional speech and language therapy. They also advised that they would enroll David in the morning preschool cooperative program at the West Side YMCA.  (Exhibit 10)

CARD case manager, Deidre King, testified at the hearing that she oversees David's services for the agency. (T. 28-29)  Trained in the ABA system, Ms. King has worked with CARD since 2001, providing 1:1 therapy for children with autism and related disorders and supervising therapists working with the children. (T. 28-29)  Ms. King testified that she is working with David and his family: providing 1:1 therapy for David, supervising his "shadow" who accompanies him to school and managing team meetings for those who are responsible for David's care at school and home.  (T. 32, 34)   Ms. King testified that in addition to the therapist who accompanies David to school, two other therapist work with David at home. (T. 34)   Without continued support at home, Ms. King stated that David wanders about the house without engaging in any activity or playing with his toys.  (T. 45) Ms. King has observed David at school on two separate occasions.  (T. 44)

Ms. King opined that David needs the program and would not be able to attend school without a trained adult to help him generalize all the skills that he's learning in the home to the school environment.  (Exhibit 13, T 35)  Ms. King testified that David is not aware of his peers and would be lost without assistance. (T. 35-37)  She noted that he has fleeting eye

Hearing Officer's Findings of Fact and Decision                                          5

Case No.  56004

contact and needs constant re-focusing to stay connected with the activities and to play with the other children. (T. 37)    According to Ms. King, David does not use language; the therapist provides him with a language to engage specific activities. (T. 44)

The Parents are seeking eighteen additional hours of services from CARD, for a total of 38 hours per week.  Ms. Monique Vallario (who supervises Ms. King) testified how the increased hours would be allocated: twenty hours would be used for ABA therapy at home; fifteen hours for the therapist who accompanies David to school; and six to eight hours per month would be allocated for supervisory tasks, including team meetings with parents, therapist and teachers. (T 54, 59) The parents enrolled David in the pre school program at the Westside YMCA

## DEPARTMENT OF EDUCATION'S POSITION

No testimony was introduced at the hearing on the district's behalf.  However, according to the IEP (see page 7), the DOE indicated that David could not achieve the goals of his IEP in a general education environment even with the assistance of supplementary aids and services because "David has significant overall developmental delays".  The DOE allocated 20 hours of SEIT services in the home, along with speech and language and occupational therapy three times a week for this student.

## THE PARENT'S POSITION

The parents are requesting tuition reimbursement for the cost of sending David to a general education pre school.  They are also requesting an additional 18 hours for related services, including fifteen hours per week for ABA therapeutic services to cover the services of a therapist to accompany David to the school and six to eight hours per month to supervise the team working with David and his family. The Parents argue that without these services, David would be unable to attend school because he has difficulty dealing with other children, staying focused on activities and lacks the language to handle most interactions.  With services David can reach his goals as set forth in the IEP.  In addition, the parents are seeking two additional hours for speech and language therapy.  However, they note that they are willing to decrease the number of hours for occupational therapy from three hours per week to one hour per week, using the other two hours for speech and language therapy.  (T. 62)

Case No.  56004

---

### FINDINGS OF FACT AND CONCLUSION OF LAW

The Individuals with Disabilities Education Act (IDEA) ensures that children with disabilities have available to them a FAPE (20 U.S.C. Section 1400 [d][A]).  A FAPE includes special education and related services provided in conformity with an IEP required by the Act (20 USC Section 1401 [8] and it is the IEP that tailors the required FAPE to the unique needs of the child (Bd. of Education. V. Rowley, 458 U.S. 176, 181 [1982]).  A board of education may be required to pay for educational services obtained for a child by his or her parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable consideration support the parent's claim (School Comm. of Burlington v Dep't of Education of Mass, 471 U.S. 359 [1985]).   The failure of a parent to select a program with certified teachers and known to be approved by the state in favor of an unapproved option, which includes uncertified teachers, is not itself a bar to reimbursement (Florence County School. Dist.  Four v. Carter, 510 U.S. 7 [1993]).

The Department of Education bears the burden of demonstrating the appropriateness of the program recommended by its CSE (M.S. ex rel. SS. v. Bd. of Education, 231 F.3rd 96, 102 [2d Cir. 2000], cert. denied, 532 U.S. 942 [2001]; Walczak v. Bd. of Education, 142 F. 3d 119, 122 [2d Cir. 1998]; Application of a Child with a Disability, Appeal No.  03-108; Application of a Child with a Disability, Appeal No. 02-028; Application of a Child Suspected of Having a Disability, Appeal No. 93-9.  In order to meet its burden, the DOE must show (a) that it complied with the procedural requirements set forth in the IDEA and (b) that the IEP that its CSE developed for the child through the IDEA'S procedures is reasonably calculated to confer educational benefits to the student (Rowley, 458 U.S. at 206-07 [1982]; M.S., 231 F 3d at 102; Application of a Child with a Disability, Appeal No. 02-025).   The recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. Section 1412 [a][5]; 34 C.F.R. Section 300.550 [b]; 8 NYCRR 200.6[a][1].

By definition, the IEP must be a written statement (20 U.S.C. §1414[d][1][A]), and must be in effect at the beginning of each school year (20 U.S.C. §1414[d][2]). A board of education's failure to provide a child's parents with a timely IEP may afford a basis for

concluding that the board did not offer an appropriate placement to the child (Applications of the Board of Education and a Child with a Disability, Appeal Nos. 00-091 and 01-018; Application of a Child with a Disability, Appeal No. 00-084; Application of a Child with a Disability, Appeal No. 99-81). Here, the parents claim that they did not receive a copy of the IEP until after the September 8, 2004 impartial hearing request was submitted.  The parents noted that the faxed copy of the IEP is date stamped October 6, 2004. (T. 15)  However, there is no evidence in the record to support a finding that the DOE did not mail the IEP in a timely manner.  We only know that the parent did not receive it until after the school year began.  In any event, I do not find that the parents were harmed by this procedural defect.  The mother attended the CPSE meeting and was aware of the outcome and of the recommendations, even though she clearly did not agree with the nature or amount of the services offered.  Thus, I cannot invalidate the IEP on these procedural grounds.

The central question in this case is whether the amount of special education services that the CPSE recommended were appropriate for David.  The Committee has offered twenty (20) hours of home-based SEIT services and occupational and speech/language therapy three times a week also in the home.  David had been receiving speech/language therapy sessions five (5) times a week and three sessions of occupational therapy.  There is no explanation in the IEP for the change in the level of therapy sessions.  (Exhibit 7)

There is no evidence before me that would support a finding that the program offered by the CPSE for the 2004-2005 school year is sufficient, therefore appropriate, to meet David's needs at this time.  Although the three AHRC professionals concurred about the nature and severity of David's developmental problems, they provided little guidance as to the level of services required to redress his developmental delays.  The educational evaluator recommended that David continue with the home-based ABA therapy.   The Speech pathologist recommended speech and language intervention but declined to specify what levels of services were required.  The licensed psychologist recommended special education services and speech and occupational therapy evaluations.

Only Dr. Blaustein provided an informed recommendation for a program that might benefit David during the coming school year. Dr. Blaustein recommended intensive speech

Case No. 56004

and language therapy at a level of five hours per week, increased ABA services within the home to include counseling and training for the parents, and finally a comprehensive oversight of David's program through team meetings. He also recommended small group activities to give David an opportunity to socially interact with other children who use language and other skills in an age appropriate manner. Since David is unable to attend group sessions without an adult, additional hours for the services of an ABA trained aide to accompany him to school is also appropriate. There is no indication whether the CPSE considered Dr. Blaustein's recommendations or considered the recommended level of service inappropriate. A home environment is a highly restrictive environment; the evidence presented in this case does not support the need for such a restricted environment. Therefore I find that the DOE has not demonstrated that the recommended program is reasonably calculated to confer an educational benefit in a least restrict environment.

Even if DOE's recommended program is appropriate, the parent may still be reimbursed for expenses for services if the services offered were inadequate, provided the services selected by the parents were appropriate, and equitable consideration support the parent's claim (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 [1985]). In determining appropriateness, the private school need not employ certified special education teachers, nor have its own IEP for the child (Application of a Child with a Disability, Appeal No. 03-108; Application of a Child with a Disability, Appeal No. 02-027;, Appeal No. 94-20). While Parents are not held as strictly to the standard of placement in the LRE as school districts are, the restrictiveness of the parental placement may be considered in determining whether the parents are entitled to an award of tuition reimbursement. (Rafferty v. Cranston Pub. School Comm., 315 F. 3d 21, 26-27 [1st Cir. 2002]. The parents bear the burden of proof as to the appropriateness of the educational program and services (M.S., 231 F. 3d at 104; Application of a Child with a Disability, Appeal No. 03-108; Application of a Child with a Disability, Appeal No. 95-57; Application of the Board of Education of the Monroe-Woodbury Cent School District, Appeal No. 94-34; Application of a Child with a Disability, Appeal No. 94-29).

Hearing Officer's Findings of Fact and Decision

Case No. 56004

The parents are using SEIT services supplied by CARD, an approved DOE provider. The increased level of service is reasonable given the nature of David's program and the need for supervision, training and oversight to ensure that David has a cohesive program. The YMCA program may not be an approved program but there is no requirement that the YMCA pre school program be on an approved list. Based upon the testimony of the case manager and the parent that David is improving and learning from his experience at the school, I find that the parents have met their burden in establishing the appropriateness of the educational program and services. The parents took the child for evaluation as requested by the CPSE and attended the IEP meeting. There are no equitable considerations in this record that would support a finding against the parent receiving tuition reimbursement for the additional services for which they have paid. I also find that the parents should be allowed to increase the level of service for speech and language to five (5) hours per week as requested. This is the level of service that the child had previously. Absent an explanation for the decrease of service, I find the reduction in hours to be unwarranted.

**ORDER**

Therefore, I order that the upon documented proof of payment, the DOE reimburse the parents for tuition paid for David's attendance at the West Side YMCA and continue payment for the balance of the school year; reimburse the parents for the cost of eighteen (18) hours of additional services provided by CARD from September and to continue payment to CARD through the balance of the school year. In addition, the CPSE shall issue related services authorizations immediately, increasing the number of hours of speech/language therapy to five hours per week and decreasing the number of hours from three to one hour per week for occupational therapy.

Date: January 4, 2005

JUDITH PIERCE, ESQ.
Impartial Hearing Officer

JP:ds

Case No.   56004

---

### PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Findings of Fact and Decision

Case No.   56004

_____

## DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| 1. | Educational Evaluation and Observation, 2/24/04 | Parent |
| 2. | Speech & Language Evaluation, 2/24/04 | Parent |
| 3. | Psychological Evaluation 2/24/04 | Parent |
| 4. | Social History | Parent |
| 5. | Preschool Student Evaluation Summary Report | Parent |
| 6. | Speech & Language Evaluation, 3/29/04 | Parent |
| 7. | IEP, 5/6/04 | Parent |
| 8. | Board of Education Notice of Initial Recommendation, 7/14/04 | Parent |
| 9. | Board of Education Approval Form, 7/14/04 | Parent |
| 10. | Two Letters, 8/18/04 | Parent |
| 11. | Board of Education Approval Form, 8/23/04 | Parent |
| 12. | Demand for a Hearing | Parent |
| 13. | CARD Quarterly Report, 10/15/04 | Parent |
| 14. | Disclosure Letter, 11/1/04 | Parent |
| 15. | Check | Parent |
| 16. | Bank Statements | Parent |

1/2/2008
3:52 PM

MAYERSON & ASSOCIATES

Slip Listing

Page    1

---

## Selection Criteria

| Clie.Selection | Include: Brault, |
| Clie.Selection | Include: Brault, |
| Slip.Classification | Open |
| Clie.Selection | Include: Brault, |
| Slip.Transaction Ty | 1 - 1 |

Rate Info - identifies rate source and level

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 20798          TIME<br>4/27/2004<br>WIP<br>Review of Case Material | Thivierge<br>Review of Case Material<br>Brault, | 2.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 450.00 |
| 20799          TIME<br>4/28/2004<br>WIP<br>Conference met with client in office | Thivierge<br>Conference<br>Brault, | 3.50<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 787.50 |
| 19614          TIME<br>4/30/2004<br>WIP<br>Telephone conference w/ Kim re: having<br>Lisa Fernette evaluate David and going to<br>the IEP; TC w/ Lisa Fernette re: evaluation<br>and IEP; TC w/ Kim re: to call Lisa | Crane<br>Telephone conference<br>Brault, | 0.50<br>0.00<br>0.00<br>0.00 | 90.00<br>T@1 | 45.00 |
| 21323          TIME<br>5/6/2004<br>WIP<br>Conference with client about providers | Thivierge<br>Conference<br>Brault, | 1.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 225.00 |
| 21314          TIME<br>5/6/2004<br>WIP<br>Conference spoke to mom about IEP<br>meeting | Thivierge<br>Conference<br>Brault, | 0.78<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 175.50 |
| 21348          TIME<br>5/12/2004<br>WIP<br>Correspondence sent e-mail to client | Thivierge<br>Correspondence<br>Brault, | 1.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 225.00 |
| 21405          TIME<br>5/20/2004<br>WIP<br>Conference spoke to expert provider | Thivierge<br>Conference<br>Brault, | 1.00<br>0.00<br>0.00<br>0.00 | 225.00<br>T@1 | 225.00 |

1/2/2008                                   MAYERSON & ASSOCIATES
3:52 PM                                         Slip Listing                                          Page       2

| Slip ID | | Timekeeper | Units | Rate | Slip Value |
|---|---|---|---|---|---|
| Dates and Time | | Activity | DNB Time | Rate Info | |
| Posting Status | | Client | Est. Time | Bill Status | |
| Description | | Reference | Variance | | |
| 21406 | TIME | Thivierge | 0.67 | 225.00 | 150.75 |
| 5/20/2004 | | Correspondence | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Correspondence sent e-mail to mom | | | 0.00 | | |
| 21127 | TIME | Cristiane | 0.10 | 105.00 | 10.50 |
| 9/1/2004 | | General Administration | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Called Parents to ask questions for Demand | | | 0.00 | | |
| 21141 | TIME | Cristiane | 0.10 | 105.00 | 10.50 |
| 9/3/2004 | | General Administration | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Called, e-mailed Kim to request information | | | 0.00 | | |
| 21887 | TIME | Boksenbaum | 2.75 | 90.00 | 247.50 |
| 9/3/2004 | | Prepare Demand | 0.00 | T@1 | |
| WIP | | Brault, | 2.75 | | |
| Prepare demand for due process | | | 0.00 | | |
| 37696 | TIME | Mayerson | 3.10 | 435.00 | 1348.50 |
| 9/6/2004 | | Prepare Demand | 0.00 | T@5 | |
| WIP | | Brault, | 0.00 | | |
| Prep. demand for due process and review of file. | | | 0.00 | | |
| 21151 | TIME | Cristiane | 0.20 | 105.00 | 21.00 |
| 9/8/2004 | | General Administration | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Spoke to Kim - filed demand | | | 0.00 | | |
| 21891 | TIME | Boksenbaum | 0.50 | 90.00 | 45.00 |
| 9/10/2004 | | Pendency issues | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Pendency memo | | | 0.00 | | |
| 21800 | TIME | Cristiane | 0.10 | 105.00 | 10.50 |
| 10/8/2004 | | Pendency issues | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| Pendency issues with Mitchell Lasco | | | 0.00 | | |
| 22036 | TIME | Cristiane | 0.10 | 105.00 | 10.50 |
| 10/25/2004 | | General Administration | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| called district and e-mailed questions about settlement | | | 0.00 | | |
| 22047 | TIME | Cristiane | 2.50 | 105.00 | 262.50 |
| 10/26/2004 | | Prepare Disclosures | 0.00 | T@1 | |
| WIP | | Brault, | 0.00 | | |
| disclosures | | | 0.00 | | |

| 1/2/2008<br>3:52 PM | MAYERSON & ASSOCIATES<br>Slip Listing | | | Page     3 |

| Slip ID<br>  Dates and Time<br>  Posting Status<br>  Description | Timekeeper<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 21986    TIME<br>  11/1/2004<br>  WIP<br>  Hearing Prep spoke to expert about testifying | Thivierge<br>Hearing Prep<br>Brault, | 1.00<br>0.00<br>0.00<br>0.00 | 295.00<br>T@1 | 295.00 |
| 22067    TIME<br>  11/1/2004<br>  WIP<br>  supplemental disclosures | Cristiane<br>Prepare Disclosures<br>Brault, | 0.50<br>0.00<br>0.00<br>0.00 | 105.00<br>T@1 | 52.50 |
| 37695    TIME<br>  11/1/2004<br>  WIP<br>  Prep. for hearing and review file. | Mayerson<br>Hearing Prep<br>Brault, | 4.10<br>0.00<br>0.00<br>0.00 | 435.00<br>T@5 | 1783.50 |
| 37697    TIME<br>  11/2/2004<br>  WIP<br>  GSM hearing attended and prep. a.m. | Mayerson<br>Hearing Attendance<br>Brault, | 3.20<br>0.00<br>0.00<br>0.00 | 435.00<br>T@5 | 1392.00 |

| Grand Total | | | | |
|---|---|---|---|---|
| | Billable | 28.70 | | 7773.25 |
| | Unbillable | 0.00 | | 0.00 |
| | Total | 28.70 | | 7773.25 |

1/2/2008                              MAYERSON & ASSOCIATES
3:54 PM                                    Slip Listing                                    Page     1

---

Selection Criteria

---

Clie.Selection           Include: Brault EXP
Clie.Selection           Include: Brault EXP
Slip.Classification      Open
Clie.Selection           Include: Brault EXP
Slip.Transaction Ty      2 - 2

---

Rate Info - identifies rate source and level

| Slip ID Dates and Time Posting Status Description | | | Timekeeper Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|---|---|
| 23128 10/26/2004 Billed Messenger Service | EXP G:15299 | 1/11/2006 | case manager Messenger Service Brault EXP | 1 | 37.30 | 37.30 |
| 23101 10/29/2004 Billed Federal Express | EXP G:15299 | 1/11/2006 | case manager Federal Express Brault EXP | 1 | 36.97 | 36.97 |
| 22966 11/2/2004 Billed Parking | EXP G:15299 | 1/11/2006 | Mayerson Parking Brault EXP | 1 | 43.00 | 43.00 |
| 25108 8/24/2005 Billed Federal Express | EXP G:15299 | 1/11/2006 | case manager Federal Express Brault EXP | 1 | 15.02 | 15.02 |

| Grand Total | | | | | |
|---|---|---|---|---|
| | Billable | 0.00 | | 132.29 |
| | Unbillable | 0.00 | | 0.00 |
| | Total | 0.00 | | 132.29 |